# CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Charles Malcolm

October 2, 1998

Case No. CR98-1346

BY JUDGE ROBERT P. DOHERTY, JR.

Defendant lived and worked in a three-story business building owned by his family. Late one night, the police, acting on a tip from a confidential informant, located drugs in the Defendant's parked automobile by the use of a K-9 drug-sniffing dog. They then approached the rear of the building and repeatedly knocked on the door, only getting the Defendant to open it after a police dispatcher contacted Defendant by telephone and advised him that the police at the door wanted to talk to him. When Defendant opened the door, one of the officers stepped across the threshold, advised the Defendant of their discovery of drugs in his car by use of the K-9 dog, and requested permission to search the building for additional contraband. Defendant testified that he refused to consent to a search and asked the officer to leave. Several other officers entered and left the entryway to the building while repeatedly asking for permission for a consent search, and each time the Defendant refused the search and asked that they leave his building. Refusing the Defendant's request to leave, the police advised the Defendant that if necessary they would detain him until a search warrant was obtained. They further told him, or implied, that if drugs were found, they would arrest both him and his stepson, who was asleep on the premises, but if he gave consent to search, no one would go to jail that night. After admitting to possession of a small amount of drugs, Defendant gave his permission to search the building but denied that he had a key to a locked room on the third floor which was rented to a law firm for file storage. Police called the Defendant's aunt, who was one of the building's owners, and requested permission to search the third floor room. The aunt told

police where the key to that room was located and that the Defendant did in fact have access to the room. A large quantity of drugs was found in the room. Defendant has moved to suppress the evidence as the product of an unlawful search claiming that the consent was obtained by coercion and duress. The Commonwealth argues that both the consent and the search were proper and that the contraband was properly seized. The Court finds in favor of the Defendant.

The Court is satisfied from the evidence that the police stepped through the entranceway of the building and requested permission to enter and search for drugs. There was no evidence that Defendant impliedly gave his consent for them to enter, and, in fact, the Defendant testified that he repeatedly requested that the officers leave. Under these circumstances, the constitutional guarantees of freedom from unreasonable searches and seizures come into play. "The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Walls v. Commonwealth*, 2 Va. App. 639, 644 (1986), quoting from *Peyton v. New York*, 445 U.S. 573 (1980). In our case, exigent circumstances did not exist. The consent to search had not been received from the Defendant until after the illegal entry. "Under these circumstances, the consent itself was a fruit of the poisonous tree unless the Commonwealth can prove that it was obtained through an independent act of free will, rather than by means of the illegal entry." *Walls*, 652. Such proof has not been presented. The entry by the police into the building was unlawful, and the evidence seized as a result of the consent search should be suppressed.

The issue of the now moot third party consent to enter the locked room does not bother the Court because the Defendant lied when he said that he did not have access to that area of the building. The Court is troubled, however, about the allegation of coercion in connection with obtaining the Defendant's original consent, notwithstanding the fact that it was obtained after entry into the building. Although that question is also moot, it would be prudent for the Commonwealth to assure itself that adequate training on the subject of consent searches is currently available to local law enforcement officers.

All evidence obtained as a result of the consent search of the building will be suppressed.